PUBLISH

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**November 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

GREGORY TUCKER,

　　　Plaintiff - Appellee,

v.

FAITH BIBLE CHAPEL
INTERNATIONAL, d/b/a Faith Christian
Academy, Inc.,

　　　Defendant - Appellant.

------------------------------------

EUGENE VOLOKH; ROBERT J.
PUSHAW; RICHARD W. GARNETT;
ROBERT COCHRAN; ELIZABETH A.
CLARK; THE ASSOCIATION OF
CHRISTIAN SCHOOLS
INTERNATIONAL; THE COLORADO
CATHOLIC CONFERENCE;
RELIGIOUS LIBERTY SCHOLARS;
JEWISH COALITION FOR RELIGIOUS
LIBERTY; PROFESSOR ASMA UDDIN;
NATIONAL WOMEN'S LAW CENTER;
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES; AMERICAN SEXUAL
HEATH ASSOCIATION; CALIFORNIA
WOMEN LAWYERS; DC COALITION
AGAINST DOMESTIC VIOLENCE;
DESIREE ALLIANCE; EQUAL RIGHTS
ADVOCATES; EQUALITY
CALIFORNIA; EQUITY FORWARD;
FORGE, INC.; GLBTQ LEGAL
ADVOCATES & DEFENDERS; HUMAN
RIGHTS CAMPAIGN; IN OUR OWN
VOICE; NATIONAL BLACK WOMEN'S

No. 20-1230
(D.C. No. 1:19-CV-01652-RBJ-STV)
(D. Colo.)

REPRODUCTIVE JUSTICE AGENDA;
KWH LAW CENTER FOR SOCIAL
JUSTICE AND CHANGE;
LATINOJUSTICE PRLDEF; LEGAL AID
AT WORK; LEGAL VOICE; MUSLIMS
FOR PROGRESSIVE VALUES; NARAL
PRO-CHOICE AMERICA; NATIONAL
ASIAN PACIFIC AMERICAN
WOMEN'S FORUM; NATIONAL
ASSOCIATION OF SOCIAL WORKERS;
NATIONAL COALITION AGAINST
DOMESTIC VIOLENCE; NATIONAL
ORGANIZATION FOR WOMEN
FOUNDATION; NEW YORK LAWYERS
FOR THE PUBLIC INTEREST; PEOPLE
FOR THE AMERICAN WAY
FOUNDATION; RELIGIOUS
COALITION FOR REPRODUCTIVE
CHOICE; REPRODUCTIVE JUSTICE
ACTION COLLECTIVE; SERVICE
EMPLOYEES INTERNATIONAL
UNION; SPARK REPRODUCTIVE
JUSTICE NOW!, INC.; UJIMA INC.;
THE NATIONAL CENTER ON
VIOLENCE AGAINST WOMEN IN THE
BLACK COMMUNITY; WOMEN
EMPLOYED; WOMEN LAWYERS ON
GUARD INC.; WOMEN'S BAR
ASSOCIATION OF THE DISTRICT OF
COLUMBIA; WOMEN'S BAR
ASSOCIATION OF THE STATES OF
NEW YORK; WOMEN'S INSTITUTE
FOR FREEDOM OF THE PRESS; THE
WOMEN'S LAW CENTER OF
MARYLAND; WOMAN'S LAW
PROJECT; WV FREE; CIVIL RIGHTS
EDUCATION AND ENFORCEMENT
CENTER; NATIONAL EMPLOYMENT
LAWYERS ASSOCIATION; THE
EMPLOYEE RIGHTS ADVOCACY
INSTITUTE FOR LAW & POLICY, AND
THE INSTITUTE FOR
CONSTITUTIONAL ADVOCACY AND

PROTECTION; BENEDICTINE
COLLEGE, INC.; THOMAS C. BERG;
MARK E. CHOPKO; CHRISTIAN
LEGAL SOCIETY; CARL H. ESBECK;
DOUGLAS LAYCOCK; THE
CARDINAL NEWMAN SOCIETY; THE
LUTHERAN CHURCH-MISSOURI
SYNOD; ROBERT W. TUTTLE,

      Amici Curiae.

---

## ORDER

---

Before **HARTZ**, **TYMKOVICH**, **MATHESON**, **BACHARACH**, **PHILLIPS**,
**McHUGH**, **MORITZ**, **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.[*]

---

This matter is before the court on *Defendant-Appellant's Petition for Rehearing En Banc* ("Petition"). We also have a response from Appellee, and a reply from Appellant.

The Petition, response, and reply were circulated to all non-recused judges of the court who are in regular active service, and a poll was called. A majority of the participating judges voted to deny the Petition. *See* Fed. R. App. P. 35(a). Consequently, the Petition is DENIED. Judges Tymkovich, Bacharach, Eid, and Carson voted to grant en banc rehearing. Judge Ebel has filed a separate concurrence in support of the denial of en banc rehearing, which is joined by Judge McHugh. Judge Bacharach has filed a separate dissent, which is joined by Judges Tymkovich and Eid.

---

[*] The Honorable Jerome A. Holmes is recused in this matter and did not participate in consideration of the Petition.

The pending motions for leave to file amicus briefs are GRANTED, as is the *Unopposed Motion to Withdraw Amicus Party Maur Hill-Mount Academy's Joinder in Amicus Brief and for Leave to File Substitute Brief* ("Motion to Withdraw"). The Clerk's Office shall delete the proposed amicus brief submitted with the June 28, 2022 *Unopposed Motion for Leave to File Amicus Brief in Support of Appellant Faith Bible Chapel's Petition for Rehearing En Banc by Association of Christian Schools International, Colorado Catholic Conference, Lutheran Church-Missouri Synod, The Cardinal Newman Society, Benedictine College, and Maur Hill-Mount Academy*, and replace it with the substitute amicus brief submitted with the Motion to Withdraw.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk
Entered for the Court

4

**EBEL**, J.  Authoring Judge's Statement Supporting Order Denying En Banc Review

The only question presented in this case is whether, under <u>Cohen</u>'s collateral order doctrine,[1] Defendant Faith Bible Chapel International ("Faith Christian") is entitled to an immediate appeal from the district court's interlocutory ruling denying Faith Christian summary judgment on its affirmative ministerial exception defense because there are genuinely disputed issues of material fact as to whether Plaintiff Gregory Tucker qualifies as a minister for purposes of the exception.  Our panel decision denying Faith Christian an immediate appeal is consistent with well-established lines of Supreme Court precedent and does not create any circuit split.

First and foremost, our decision is consistent with the Supreme Court's long line of cases permitting an interlocutory appeal under <u>Cohen</u> in only limited circumstances, as a narrow exception to Congress's requirement in 28 U.S.C § 1291 that appeals be taken only from final judgments that end litigation.  <u>See, e.g.</u>, <u>Will v. Hallock</u>, 546 U.S. 345, 349–50 (2006); <u>Johnson v. Jones</u>, 515 U.S. 304, 309 (1995).  The Supreme Court has consistently admonished circuit courts against expanding the availability of interlocutory <u>Cohen</u> appeals.  <u>See</u> <u>Kell v. Benzon</u>, 925 F.3d 448, 452 (10th Cir. 2018).  Our decision heeds the Court's admonitions.

The Supreme Court has permitted interlocutory appeals under <u>Cohen</u> in very limited situations, but only to permit early review of legal, rather than factual, questions,

---

[1] <u>Cohen v. Beneficial Industrial Loan Corp.</u>, 337 U.S. 541 (1949).

see Johnson, 515 U.S. at 307, 309–18.  The Supreme Court has specifically denied an immediate appeal to challenge an interlocutory ruling denying summary judgment because there was sufficient evidence for the case to survive summary judgment and proceed to trial.  See id. at 307, 313–18.  That is exactly the issue Faith Christians seeks to appeal immediately in our case.

In Johnson, the Supreme Court denied an immediate appeal from a decision denying summary judgment because there remained disputed issues of material fact.  The Supreme Court concluded that the costs of delay, expense and disruption of allowing interlocutory appeals in the midst of ongoing litigation outweighed the benefits of an interlocutory appeal.  See id.  Those same costs support our conclusion not to permit an immediate appeal in our case.

Here, those costs stem in part from the fact that the question of whether an employee qualifies as a minister involves a case-by-case fact-intensive inquiry, as the Supreme Court has clearly recognized.  See Our Lady of Guadalupe Sch. v. Morrisey-Berru, 140 S. Ct. 2049, 2063, 2066–67 (2020); Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171, 190–94 (2012).  Our panel decision is consistent with the Supreme Court's recognition of the fact-intensive nature of the inquiry into whether a religious employee should be deemed a minister.  Contrary to this Supreme Court authority, the dissent from the denial of en banc rehearing ("dissent") incorrectly insists that this case presents only a legal issue.

The dissent also contradicts the Supreme Court by positing that the ministerial

2

exception presents a structural limitation on courts' authority to hear employment cases. To the contrary, the Supreme Court has explained "that the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar . . . because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'" Hosanna-Tabor. 565 U.S. 195 n.4 (quoting Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 254 (2010)).

Our panel decision, then, is consistent with well-established lines of Supreme Court precedent.  Our decision also does not create any circuit split.  It appears that no other circuit has addressed the specific question presented here—whether a religious employer is entitled to an immediate appeal under Cohen from a district court's interlocutory ruling denying the employer summary judgment on its affirmative ministerial exception defense because there are genuinely disputed issues of material fact as to whether the employee qualifies as a minister.  Further, Justice Alito, joined by Justices Thomas, Kavanaugh and Barrett, lends support to our position by recognizing, as we did, that a district court's interlocutory decision declining to apply the ministerial exception defense can be effectively reviewed following the entry of final judgment ending the litigation.  See Gordon Coll. v. DeWeese-Boyd, 142 S. Ct. 952, 955 (2022) (Alito, J.; statement respecting denial of certiorari).  In light of that, an interlocutory appeal is not warranted under Cohen.

Furthermore, the Second Circuit, in addressing the separate but related affirmative church autonomy defense, recently reached the same conclusion as our panel, holding

that a religious employer was not entitled to an immediate collateral-order appeal from the denial of a motion to dismiss based on that defense.  See Belya v. Kapral, 45 F.4th 621, 625 (2d Cir. 2022).

There is, then, no circuit split on the narrow procedural issue presented in this case.  What little authority there is instead unanimously supports our decision.

Notwithstanding that authority, the dissent, instead, cites three cases which address a completely different question—whether a religious employer can waive, or forfeit, its affirmative ministerial exception defense by failing to raise it.[2]  Each of those three cases addressed waiver only after determining that the employee qualified as a minister, which is the threshold question at issue in our case.  Whatever general principles one might glean from these waiver cases, they do not govern here and they do not address the question presented in our appeal.  Furthermore, in Tomic, the Seventh Circuit treated the ministerial exception as a jurisdictional bar, a position the Supreme Court later rejected in Hosanna-Tabor.  The three cases on which the dissent relies, then, do not undercut the well-established Supreme Court case law that compels our decision to deny an interlocutory appeal.

I would end with three practical points.  First, there will be no judicial "meddling" with religion if a fact-finder ultimately determines that Tucker is not a minister, because

---

[2] The dissent cites to Lee v. Sixth Mount Zion Baptist Church, 903 F.3d 113 (3d Cir. 2018); Conlon v. InterVarsity Christian Fellowship/USA, 777 F.3d 829 (6th Cir. 2015); and Tomic v. Catholic Diocese, 442 F.3d 1036 (7th Cir. 2006), abrogated in part by Hosanna-Tabor, 565 U.S at 195 n.4.

4

religious employers are amenable to employment discrimination claims brought by non-ministerial employees. That is the factual question still to be determined in our case. The dissent's analysis starts with the incorrect (and contested) premise that Tucker should be deemed a minister.

Second, although we must decide whether to apply <u>Cohen</u> to the <u>category</u> of cases at issue here, <u>see</u> <u>Johnson</u>, 515 U.S. at 304, 315, this particular case is not one where the religious employer is currently being harmed by what the dissent refers to as a "renegade" minister. Tucker, whether or not a minister, has already long since been fired.

Third, although we have held that a religious employer is not entitled under the collateral order doctrine to an immediate appeal from the denial of summary judgment on its affirmative ministerial exception defense when there are genuine disputes of material fact, we do not foreclose other avenues for immediate appeal in appropriate cases, such as seeking certification for an interlocutory appeal under 28 U.S.C. § 1292(b), or appealing the denial of a preliminary injunction under § 1292(a)(1).

Because the panel majority's opinion was consistent with well-established case law, does not create a circuit split, and does not unduly encumber religious organizations, the en banc court appropriately denied en banc consideration.

*Gregory Tucker* v. *Faith Bible Chapel International, d/b/a Faith Christian Academy, Inc.*, Case No. 20-1230

**BACHARACH**, J., dissenting from the denial of en banc consideration.

Parties ordinarily can't appeal until the district court enters a final judgment. *See* 28 U.S.C. § 1291. A narrow exception exists under the collateral-order doctrine, which recognizes appellate jurisdiction over collateral issues even before the entry of a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 524–25 (1985).

This appeal involves a religious body's invocation of the collateral-order doctrine to appeal the denial of summary judgment on the ministerial exception. The panel majority rejected that effort, treating the ministerial exception like other affirmative defenses reviewed by appellate courts after final judgment.

In my view, that treatment reflects a fundamental misconception of the ministerial exception. Though most defenses protect only against liability, the ministerial exception protects a religious body from the suit itself. Without that protection, religious bodies will inevitably incur protracted litigation over matters of religion. The stakes are exceptionally important for religious bodies deciding whom to hire or fire.

These stakes arise from the structural role of the ministerial exception in limiting governmental power over religious matters. *See Conlon v. InterVarsity Christian Fellowship/USA*, 777 F.3d 829, 836 (6th Cir. 2015) ("The ministerial exception is a structural limitation

imposed on the government by the Religion Clauses."); *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 n.4 (3d Cir. 2018) (noting that the ministerial exception "is rooted in constitutional limits on judicial authority"); *see also* John Hart Ely, *Democracy & Distrust: A Theory of Judicial Review* 94 (1980) (arguing that the Religion Clauses perform a "structural or separation of powers function"); Peter J. Smith & Robert W. Tuttle, *Civil Procedure & the Ministerial Exception*, 86 Fordham L. Rev. 1847, 1880–81 (2018) (noting that the ministerial exception is "best understood as an effectuation of the Establishment Clause's limits on governmental authority to decide strictly and purely ecclesiastical matters" (citing *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012)); Carl H. Esbeck, *The Establishment Clause as a Structural Restraint on Governmental Power*, 84 Iowa L. Rev. 1, 3–4 (1998) (arguing that the Establishment Clause serves as a "structural restraint on the government's power to act on certain matters pertaining to religion").

Given the structural role of the ministerial exception, the Supreme Court held that the "ministerial exception *bars . . . a suit*" over the religious body's decision to fire the plaintiff. *Hosanna-Tabor*, 565 U.S. at 196 (emphasis added). Despite the Supreme Court's characterization of the ministerial exception as a bar to the *suit* itself, the panel majority interprets the ministerial exception as a mere defense against *liability*.

In interpreting the ministerial exception this way, the panel majority breaks from the only circuit to apply *Hosanna-Tabor*'s characterization of the ministerial exception. Prior to *Hosanna-Tabor*, the Sixth Circuit had held that a religious body could waive the ministerial exception. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 226 (6th Cir. 2007). But the Sixth Circuit later concluded that the ministerial exception was no longer waivable because *Hosanna-Tabor* had treated the ministerial exception as a bar to the suit itself. *Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 836 (6th Cir. 2015). For this conclusion, the court drew upon two of *Hosanna-Tabor*'s key passages:

1. "[T]he Establishment Clause . . . *prohibits* government involvement in ecclesiastical matters."

2. "It is '*impermissible* for the government to contradict a church's determination of who can act as its ministers.'"

*Id.* (alteration in original) (quoting *Hosanna-Tabor*, 565 U.S. at 185, 189).

The panel majority skirts this reasoning in *Hosanna-Tabor*, pointing to the Supreme Court's observation elsewhere that the ministerial exception doesn't divest the district court of jurisdiction.[1] *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195

---

[1]    The Second Circuit recently took the same approach, concluding that the collateral-order doctrine doesn't cover the church-autonomy doctrine because it isn't jurisdictional. *Belya v. Kapral*, 45 F.4th 621, 633 (2d Cir. 2022).

n.4 (2012). But our issue doesn't involve jurisdiction in district court. In fact, the panel majority elsewhere observes that characterization of an issue as jurisdictional doesn't bear on appealability under the collateral-order doctrine. *See Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1038 (10th Cir. 2022) (observing that orders denying dismissal based on subject-matter jurisdiction don't trigger the collateral-order doctrine); *see also Gray v. Baker*, 399 F.3d 1241, 1245 (10th Cir. 2005) ("[T]he fact that the district court's order arguably concerns its own subject matter jurisdiction . . . is not sufficient, standing alone, to bring the district court's order within the scope of the collateral order doctrine.").

Conversely, even when affirmative defenses aren't jurisdictional in district court, they may trigger the collateral-order doctrine. For example, absolute immunity and qualified immunity aren't jurisdictional in district court. *See Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatsoever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction . . . ."). But these affirmative defenses can still trigger the collateral-order doctrine to create *appellate jurisdiction. See Tucker*, 36 F.4th at 1025–26, 1039 n.14 (observing that issues involving absolute immunity and qualified immunity may trigger the collateral-order doctrine).

Though absolute immunity and qualified immunity may trigger the collateral-order doctrine, they are waivable. *See Yellen v. Cooper*, 828 F.2d

1471, 1476 n.1 (10th Cir. 1987). That isn't true for the ministerial exception, for three circuits have recognized the ability of courts to consider the ministerial exception sua sponte and beyond the power of a party to waive. *See Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 n.4 (3d Cir. 2018) (concluding that "the Church is not deemed to have waived [the ministerial exception] because the exception is rooted in constitutional limits on judicial authority"); *Conlon v. InterVarsity Christian Fellowship/USA*, 777 F.3d 829, 836 (6th Cir. 2015) (concluding that "the Constitution does not permit private parties to waive the First Amendment's ministerial exception" because "[t]his constitutional protection is . . . structural"); *Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006) (stating that "the ministerial exception . . . is not subject to waiver or estoppel"), *abrogated in part on other grounds*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012).

Given its structural role, the ministerial exception protects religious bodies from suits brought by employees who lead "important religious ceremonies or rituals." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 199 (2012) (Alito, J., concurring). Determining the importance of a religious ceremony or ritual inevitably entwines the courts in ecclesiastical doctrine. For example, the ministerial exception may apply to matters of education because of the central role of

education in many religions, including Islam, Protestantism, Judaism, and Seventh-Day Adventism. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064–66 (2020).

By deferring the chance to appeal, the panel majority subjects religious bodies to time-consuming and expensive litigation over the religious importance of the roles occupied by countless employees. However the courts weigh these roles in individual cases, the litigation itself enmeshes the courts in ecclesiastical disputes.

Given the inevitable intrusion into matters of religion, the panel majority acknowledges the importance of the issue of appealability in matters involving the ministerial exception. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1028 (10th Cir. 2022) ("This case presents an important jurisdictional question of first impression for this Court: whether a decision denying a religious employer summary judgment on its 'ministerial exception' defense constitutes an immediately appealable final order under the collateral order doctrine."). The importance of the issue is also reflected in the many amicus briefs from states' attorneys general, religious organizations, and scholars, decrying the impact of the panel majority's treatment of the ministerial exception.

But the panel majority downplays the impact of delayed review, pointing out that a religious body can appeal once the district court has entered a final judgment. The impact of this delay on religious bodies is

not difficult to imagine: The majority's approach will often require deferral of an appellate decision while religious bodies endure discovery, pretrial motion practice, trial practice, and even post-judgment litigation. *See Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985) (stating that Title VII actions can be lengthy and subject churches to "subpoena, discovery, cross-examination, the full panoply of legal process designed to probe the mind of the church in the selection of its ministers"); *see also EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 467 (D.C. Cir. 1996) (concluding that the EEOC's two-year investigation into a minister's claim, combined with extensive pretrial inquiries and a trial, "constituted an impermissible entanglement with judgments that fell within the exclusive province of the Department of Canon Law as a pontifical institution"); *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 982, 983 (7th Cir. 2021) (en banc) (expressing concern that litigation over the ministerial exception could "protract[] [the] legal process" and "the very process of inquiry . . . may 'impinge on rights guaranteed by the Religion Clauses'" (quoting *Rayburn*, 772 F.2d at 1171 (4th Cir. 1985) and *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 502 (1979))).

Given these burdens from the litigation itself, religious bodies will undoubtedly hesitate before deciding whether to suspend or fire renegade ministers. *See Rayburn*, 772 F.2d at 1171 ("There is the danger that churches, wary of EEOC or judicial review of their decisions, might make

them with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments of who would best serve the pastoral needs of their members."); *see also Cath. Univ. of Am.*, 83 F.3d at 467 (stating that the potential cloud of litigation could affect a religious body's criteria in filling future ministerial vacancies).

The panel majority defends these burdens based on its narrow conception of the ministerial exception. To the majority, the exception protects only against liability, not the litigation itself. For this conception of the ministerial exception, the panel majority relies on a law review article coauthored by Professor Robert Tuttle. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1037, 1039 n.13 (10th Cir. 2022) (citing Peter J. Smith & Robert W. Tuttle, *Civil Procedure and the Ministerial Exception*, 86 Fordham L. Rev. 1847 (2018)). In my view, the panel majority has misinterpreted this article. There Professor Tuttle argues that "application of the collateral-order doctrine in this context would better guard against Establishment Clause violations by trial courts than would the standard requirement of a final judgment before appeal." Peter J. Smith & Robert W. Tuttle, *Civil Procedure and the Ministerial Exception*, 86 Fordham L. Rev. 1847, 1881 (2018).

Professor Tuttle has also coauthored one of the numerous amici briefs urging rehearing en banc, arguing there that

- "the First Amendment supports early resolution of the ministerial exception as a threshold legal issue, subject to interlocutory appeal," Brief of Religious Liberty Scholars as Amici Curiae in Support of Appellant at 3 (June 28, 2022),

- "[a]llowing litigation to continue when the lower court should have recognized the constitutional import of the ministerial exception will compound the injury. . . the Supreme Court in *Hosanna-Tabor* found must not occur in litigation in full," *id.* at 4, and

- "the ministerial exception closely resembles qualified immunity by protecting from burdens of merits litigation when the trial court should have granted the immunity or defense early in the case," *id*. at 10.

Other amici share Professor Tuttle's concerns. Fearing the burdens of litigation on ecclesiastical decisions, sixteen states have implored us to convene en banc to revisit the role of the ministerial exception and the applicability of the collateral-order doctrine. *See* Brief of States of Oklahoma et al. as Amici Curiae in Support of Defendant-Appellant's Petition for Rehearing En Banc (June 28, 2022).

The panel majority not only requires religious bodies to spend years and fortunes litigating who are ministers and who aren't, but also treats this intrinsically religious question as a typical fact-issue that will "often" require a trial rather than resolution through dispositive motions. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1031 n.8, 1035 n.8 (10th Cir. 2022). This characterization will undoubtedly prolong judicial meddling in religious matters.

Until now, every federal or state appellate court to address the issue has characterized ministerial status as a question of law. *See Starkman v. Evans*, 198 F.3d 173, 176 (5th Cir. 1999) ("The status of employees as ministers for purposes of *McClure* [*v. Salvation Army*, 460 F.2d 553 (5th Cir. 1972)] remains a legal conclusion for this court."); *Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 833 (6th Cir. 2015) (stating that "whether the [ministerial] exception attaches at all is a pure question of law"); *Kirby v. Lexington Theol. Seminary*, 426 S.W.3d 597, 608–09 (Kan. 2014) ("[W]e hold the determination of whether an employee of a religious institution is a ministerial employee is a question of law for the trial court, to be handled as a threshold matter."); *Weishuhn v. Lansing Catholic Diocese*, 787 N.W.2d 513, 517 (Mich. App. 2010) (characterizing the applicability of the ministerial exception as a "question of law"); *Turner v. Church of Jesus Christ of Latter-Day Saints*, 18 S.W.3d 877, 895 (Tex. App. 2000) ("Whether a person is a 'minister' for the purpose of determining the applicability of the 'ministerial exception' to judicial review of employment decisions is a question of law."), *rev. denied* (2001); *see also Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) (concluding that "[a] claim of immunity from suit under the First Amendment" entails an issue of law).

The panel majority bucks that treatment, making us the only appellate court in the country to classify the ministerial exception as an

issue of fact. This classification makes summary adjudication less likely, extending judicial entanglement in ecclesiastical matters before religious bodies can obtain appellate decisions. *See John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991) (stating that classification of an issue as a matter of law makes a case involving that issue "particularly amenable to summary judgment"). The majority's deferral of appellate review thus extends judicial meddling in religious matters—the very evil that underlays recognition of the ministerial exception.

Consider how the majority treats ministerial status in our case as a question that will "often" turn on a factual dispute. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1037, 1031 n.4 (10th Cir. 2022). In Mr. Tucker's own appellate brief supporting appellate jurisdiction, he argues that his responsibilities as "Chaplain" included

- organization of "religiously oriented" chapel services,

- spiritual guidance and counseling,

- endorsement of Christianity,

- integration of "a Christian worldview" in his teaching,

- "a passionate relationship with Jesus Christ," and

- assistance to students in developing their relationships with Jesus Christ.

Appellee's Jurisdictional Memorandum at 3, 5; Appellee's Resp. Br. at 47. Despite Mr. Tucker's own characterization of his job as a religious leader,

the majority suggests in dicta that the religious body's identical characterization improperly relies on "self-serving documents" as opposed to Mr. Tucker's evidence involving "the actual 'facts and circumstances of his employment.'" *Tucker*, 36 F.4th at 1047 n.21.

As Mr. Tucker and Faith Bible agree, these so-called "self-serving documents" accurately describe the job. This agreed description aside, the record establishes that Mr. Tucker was hired only because he'd provided written assurances that he believed in

- the divine inspiration and infallibility of the Bible,

- the existence of one God in the persons of God the Father, God the Son, and God the Holy Spirit,

- the virgin birth,

- the Lord Jesus Christ's deity, sinless humanity, atoning death, bodily resurrection, ascension to his Father's right hand, and future return in power and glory,

- the need for every person to receive the gift of eternal life from Jesus Christ in order to reach heaven,

- the ministry of the Holy Spirit,

- the church as the spiritual body headed by Christ,

- the principle of baptism through immersion, and

- the eternal existence of all people in heaven or hell.

Appellant's App'x vol. 2, at 419.

The majority's characterization of the ministerial exception serves not only to protract litigation for religious bodies wanting to hire, fire, or change ministers, but also to minimize the possibility of summary judgment on the issue of ministerial status. These consequences implicate important structural issues at the heart of the Religion Clauses.

In my view, we should heed the concerns expressed by the many amici fearful of how our decision limits the ability of religious bodies to make ministerial decisions based on ecclesiastical doctrine. Given the extent and legitimacy of those concerns, we should have convened en banc to address the appealability of the district court's ruling on the ministerial exception.